JANVIER, Judge.
This suit is based on a medical coverage clause in an automobile liability insurance policy. In a judgment holding that an unfortunate occurrence — an abortion — had not been caused by or associated with the use of the automobile in question, the District Judge dismissed the suit and plaintiffs are now before us on appeal.
At the time of the occurrence which is claimed to have caused the abortion, there was in effect a policy of liability insurance which had been issued by the defendant insurer to Mrs. Albert M. Scallan. In addition to the clause in which the insurer agreed to hold Mrs. Scallan harmless against liability resulting from damage caused by her car, the policy contains what is termed medical coverage under which it was agreed that, up to the sum of $2000, the insurer would pay “all reasonable medical expenses incurred * * * ” by “the named insured and each relative who sustains bodily injury, sickness or disease,” and to “any other person who sustains bodily injury, occupying * * * the owned automobile.” And in the policy the word “occupying” is defined to mean “in or upon or entering into or alighting from” the automobile.
On December IS, 1962, Mrs. Rene S. Zeringue, the daughter of Mrs. Albert M. Scallan, with her mother as a passenger, was operating her mother’s automobile, and on arriving at a railroad crossing, she attempted to cross the tracks. The car stalled on the tracks and could not be dislodged. Mrs. Scallan and Mrs. Zeringue feared serious injury because of an approaching train and they alighted and sustained no bodily injury at that time, though Mrs. Zeringue says that she was emotionally much disturbed. At that time she had reached about her fourth month in pregnancy and later on, shortly before January 20, which was some 35 days after the railroad episode, she feared that an abortion was imminent and consulted Dr. Frank G. Nix who had treated her in her earlier pregnancies, one of which had resulted in an abortion.
Under the care of Dr. Nix the abortion was completed, and Mr. and Mrs. Zeringue made demand on the defendant insurer for the medical expense which had been incurred. The demand was rejected and this suit is the result, the insurer contending that there is no proof that the abortion was caused by the episode in which the train was involved. This was and is obviously a medical question on which we must be guided almost entirely by the opinion of the only doctor who treated Mrs. Zeringue. He, in great detail, outlined the *102 various evidences of impending abortion and discussed some of the causes thereof, and finally concluded that, in his opinion, while it was possible that the episode on the railroad track might have caused the abortion, he felt that that had not been the cause.
Dr. Nix was asked whether he could state positively that “this incident on December 15 had any cause of this woman aborting on January 20,” and he answered, “no”. He was then asked, “It’s possible?” and he answered, “It’s possible.” Then he was asked, “It’s possible that it didn’t have anything to do with it?” and he answered: “It’s possible it didn’t. It’s possible it did, and I think you can say on that point that it didn’t. You can see people in much more severe accidents and you can’t shake the pregnancy loose with a piece of dynamite.” Dr. Nix admitted, of course, that it was possible for emotional disturbance to cause an abortion, but when asked whether he could give any other causes which might cause an abortion he said, “Oh, I can let you read about a two hundred page book, if you’d like.”
In addition to the opinion of the doctor that the abortion had not been caused by the occurence, we have the suggestive facts that Mrs. Zeringue unfortunately seems to have been rather prone to abortions, having suffered from then twice before this occurrence.
It is not really necessary to discuss the charge that when she alighted from the car, Mrs. Zeringue sustained physical injury, but since, in their petition, the plaintiffs have alleged that she did sustain such injury, we shall merely state that there is not one word to substantiate this claim. On the contrary, there is uncontradicted evidence to the effect that at that time she sustained no bodily injury. Acting under the authority of C.C.P. art. 1496, questions were propounded to Mrs. Zeringue in which she was asked whether she had fallen while alighting from the automobile and she failed to answer this question, indicating that she had not fallen at all. Furthermore, twice in his deposition Dr. Nix made the statement that when Mrs. Zeringue consulted him on or before January 20, she told him that she had sustained no physical injury but had been emotionally upset.
Since the burden is on the plaintiffs to show that the incident at the railroad track had causal connection with the abortion, it is impossible for us to say that this was the cause. Accordingly, there can be no recovery under the policy.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.